SVANG, et al, Plaintiffs, v. CLUTTERBUCK, et al, Respondents, and SCANLAN, et al, Appellants.

(240 N. W. 339.)

(File No. 7050. Opinion filed January 25, 1932.)

*Conway, Feyder & Conway,* of Sioux Falls, for Defendants-Appellants.

*Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Defendants-Respondents.

*Teigen & Davis,* of Sioux Falls, for Plaintiffs.

MISER, C. This is an action in partition. The only issue raised was by the answer and "cross-bill" of Casper Svang, now represented by respondent Clutterbuck, administratrix of his estate, and the answer of appellants Scanlan and Schultz to the cross-bill of respondent. Partition was granted as asked for by plaintiffs. The question on this appeal is whether appellants have a lien by reason of a deed which they claim to be a mortgage on an undivided two-fifteenths interest in the real property partitioned.

Appellants are the heirs of Thomas Scanlan, who, in March, 1919, loaned to Casper Svang more than $1,550 with which to buy that two-fifteenths interest from John M. Freese. Under date of April 1, 1919, Svang signed a note for $1,800 to Scanlan, as payee. While the note introduced in evidence shows the amount in writing unchanged, beneath the amount where expressed in figures is the figure "100", beneath which is a line and the balance "$1,700.00." These latter figures were not made with the same instrument with which the figure "$1,800.00" was made. In the copy of the note set forth in appellants' answer to plaintiffs' complaint and in appellants' answer to respondents' cross-bill the figures "100" and "$1,700.00" do not appear. In 1923, five years before the commencement of the present suit, Scanlan began a suit against Svang and Freese, seeking to have the deed which was signed by Freese on the same date as the note was signed by Svang declared a mortgage to secure the payment of the note. In his complaint he set out a purported copy of the note. In that copy the figures "100" and "$1,700.00" did not appear. In that complaint the amount claimed to be due on this note was $1,700, on which sum he claimed

interest at 10 per cent. In the answer of appellants Scanlan's heirs, both to the complaint and to respondents' cross-bill in the present suit, they ask that the deed be declared a mortgage to secure the sum of $1,700 with interest at the rate of 7 per cent. The note as pleaded by Scanlan in the suit begun in 1923, and by his administratrix in the suit begun in 1928, and also as introduced in evidence, bore interest at the rate of 8 per cent from date. As to the rate of interest after the due date, October 1, 1919, the printed form of note used provided that "it shall bear interest at the rate of 12%, per annum, payable annually." In the note introduced in evidence, over the printed "twelve" had been typewritten the numeral "10." B. C. Matthews, a witness on behalf of Svang, testified in the present suit that about June 24, 1922, as attorney for Svang, he was shown the note by Scanlan in Scanlan's office and made a copy of it. That note had then an unfilled blank where the figure "8" now appears and no figure "10" had been typewritten over the printed "twelve." At the time Matthews inspected the note in 1922 the figures "100" and "$1,700.00" did not appear thereon.

At the trial appellants offered the deed and note in evidence without offering any testimony as to execution and delivery. The consideration named in the deed is $1,700. The name of the grantee is "Thomas Scanlan" of "Sioux Falls, S. D." These words, as all other written words in the deed and in the note, are in the handwriting of Scanlan, but the words "Thomas Scanlan" and "Sioux Falls, S. D.," are less bold and black and were evidently written either with a different pen or with different ink than the other written words in the deed. Appellants then rested. Svang then called as a witness defendant Freese. Over the objection that his testimony was inadmissible under section 2717, Rev. Code 1919, Freese testified that at the time he signed the deed dated April 1, 1919, the name of no grantee appeared therein. Over the same objection he testified that he never acknowledged the deed before the notary public whose name appears theron, nor acknowledged it at all, nor delivered it, and that he had sold the property to Svang. The following interrogation then took place without objection:

"Q. Mr. Casper Svang? A. Yes.

"Q. Why didn't you put the name of the grantee in there

when you executed the deed? A. Mr. Scanlan didn't allow me. He says leave it blank. I will take care of that."

Furthermore, on cross-examination by appellants, Freese testified that he wanted the deed made to Svang because Svang was the one who bought the land; that he remembered that the name of Thomas Scanlan was not on the deed when he signed it because he had an argument with him; that he did not acknowledge the deed because Scanlan "just took the deed and says it is all right." He was then asked by appellants' counsel: "You understood he was going to make a mortgage. Who told you that? Tom Scanlan?" To which he replied: "Tom, when he got that deed, he says: 'I will take care of that later when I get securities fixed up' or some words to that effect. I don't know what it was."

Whether it was proper or improper to admit the testimony objected to, Freese, without objection and, to a large extent, on cross-examination by appellants, testified to substantially everything to which objection had been made, overruled, and the overruling of which is now assigned as error. There is sufficient evidence introduced without objection to support the findings of the trial court that Svang purchased the land from Freese; that Freese had transferred it to Svang by deed of May 4, 1923, after Scanlan started his first suit against Svang and Freese; that there was no grantee's name in the deed of April 1, 1919, when the same was taken from John M. Freese by Thomas Scanlan; that neither Freese nor Svang inserted the name of Thomas Scanlan therein nor authorized either orally or in writing any person to insert the name of Thomas Scanlan and that said purported deed was never acknowledged by said John M. Freese; that said deed was never made, executed and delivered by Freese or Svang to Scanlan as security for any debt or as a mortgage or a lien of any kind upon the premises described.

The trial court concluded that the deed of April 1, 1919, was void and of no effect; that it created no lien on the premises and is not a mortgage thereon; and that respondent is entitled to the possession thereof for the purpose of administration and the heirs at law of Casper Svang are the absolute owners thereof. Judgment was entered on the findings and conclusions in accordance therewith. The appeal taken is only effective as an appeal from the order denying motion for new trial.

■ The first group of assignments deals with the claimed violation of the provisions of section 2717, R.C.. No useful purpose would be served in further discussing those assignments. The errors so assigned, if they were errors, were not prejudicial inasmuch as the trial was to the court, and there was evidence properly received sufficient to support all findings made. State ex rel Smith v. Miers et al, 49 S. D. 96, 206 N. W. 236; City of Wessington Springs v. Smith, 54 S. D. 515, 223 N. W. 723.

■ The second group of assignments deals with the contention that the findings are not supported by the evidence in that, it appears that Svang borrowed $1,700 from Scanlan to buy the Freese interest; that the money was used for that purpose; and that Svang consented that Scanlan hold the title to that interest by deed from Freese to Scanlan, and directed Scanlan to take said deed as security.

Svang himself testified as an adverse witness called by appellants. When called, Svang's counsel objected, stating: "You can't examine him." No reason was then given, but respondents have set forth as additional statement the nine pages of questions and answers constituting Svang's testimony. The mental condition of the witness, who died the month following his testimony, is thereby disclosed to this court somewhat as it must have appeared to the trial court. The following excerpt is from those questions and answers:

"Q. When he gave you this forty dollars wasn't that the balance that would be due you on the deal after the paying of the recording and abstracting and the consideration of seventeen hundred dollars? A. Well but we agreed me and Mr. Scanlan agreed he asked me time and time again he says if you will leave it to me I will look out for you, that we agreed, that we agreed that he did agree, a man asked me, he asked me and he asked me."

However, it does not appear even from Svang's testimony that he ever authorized Scanlan to take the deed to this property in his name or to insert his name therein as grantee, or that he (Svang) ever had the deed in his possession, or that he personally ever saw the deed until the time of trial. Repeatedly Svang testified that Scanlan promised that he would look out for Svang if Svang would leave it to him.

It is apparent from the evidence as a whole that Svang owed Scanlan a sum between $1,550 and $1,700 at the time Freese signed the deed. The trial court made no finding as to what portion of that sum is unpaid nor any conclusion as to the present validity of the note. There is nothing to indicate that Svang would have been unwilling to execute a mortgage to Scanlan at the time he signed the note. Scanlan might have had an unquestionably valid note secured by an unquestionably valid mortgage. He failed to secure a valid mortgage or any mortgage. The trial court found that the deed of April 1, 1919, was naver made, executed, and delivered by either Freese or Svang to Scanlan as security for any debt or as a mortgage or a lien of any kind. This finding of the trial court is supported by the evidence.

Finally, appellants contend that they are entitled to an equitable lien upon this property for the amount contributed by Scanlan to its purchase by virtue of section 1693, Rev. Code 1919. However, the facts of this case as found by the trial court and as they appear from the evidence do not permit the application of that statute.

The order denying motion for new trial must be, and it is, affirmed.

POLLEY and ROBERTS, JJ., concur.

CAMPBELL, P. J., and WARREN, J., concur in result.

RUDOLPH, J., disqualified and not sitting.

MISER, C., sitting in lieu of RUDOLPH, J., disqualified.